IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANTONIO D. GONZALEZ, JR. ) | CIVIL NO. 12-00368 SOM/KSC |
| ) | |
| Plaintiff, ) | |
| ) | ORDER GRANTING IN PART AND |
| vs. ) | DENYING IN PART MOTION TO |
| ) | DISMISS |
| JENSEN OKAGAWA; ) | |
| ROBERTO CADIZ; ) | |
| REYNOLD KAM; ) | |
| DANIEL AOKI; ) | |
| JON NGUYEN; ) | |
| EVERETT HUNG; ) | |
| LOUIS M. KEALOHA; ) | |
| JONATHAN QUERIDO; ) | |
| CITY & COUNTY OF HONOLULU; ) | |
| and JOHN DOES 1-10, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

**I.      INTRODUCTION.**

Plaintiff Antonio D. Gonzalez, a former Honolulu Police Department ("HPD") officer, was arrested and charged with having caused criminal property damage by allegedly "keying" Defendant Jonathan Querido's vehicle.  The charges were ultimately dismissed by the State of Hawaii district court without consideration of the merits of the charges.  Gonzalez sues the City and County of Honolulu ("City"), the two HPD officers who investigated the matter and arrested him, four other HPD officers, and HPD's chief of police (collectively, "City Defendants"), as well as Jonathan Querido, the alleged victim.

City Defendants have moved for dismissal of the Complaint.  That motion is granted in part and denied in part.  To the extent Gonzalez asserts claims under 42 U.S.C. § 1983 against the City, those claims are dismissed.  The court also dismisses the negligence claims asserted against all Defendants.  However, the court denies City Defendants' request to dismiss the official capacity claims asserted against the individual Defendants.

Gonzalez is given leave to file a First Amended Complaint no later than January 21, 2013.

**II.    BACKGROUND.**

Gonzalez is a 70-year-old man of Puerto Rican and African American descent.  See Complaint ¶ 14.

Gonzalez says that, on the evening on October 20, 2011, he went to a Walmart store in Kunia on Oahu.  See id. ¶ 16.  That evening, Defendant Jonathan Querido had complained that someone had "keyed" Querido's car in the Walmart parking lot.  See id. Ex 8 at PageID # 48 (photo of damage to car).  That is, someone had scratched the paint on Querido's car, possibly with a key.

Querido apparently told HPD officers that, while in the Walmart store, he saw his car being "keyed," and that the culprit might have been the driver of a white pickup truck parked in the parking lot.  Querido pointed out such a truck, which was registered to Gonzalez.  Id. ¶¶ 50, 56.

According to Gonzalez, the arrest by Officers Cadiz and Okagawa was not immediate.  The officers allegedly searched for a suspect for nearly an hour before focusing on Gonzalez.  Id. ¶ 45.  Gonzalez says that proper police procedure would have been to detain him only long enough to establish his identity, and then to release him pending further investigation.  Id. ¶ 46.  Gonzalez accuses Officers Cadiz and Okagawa of having used racial profiling and of having "rush[ed] to judgment" in deciding to arrest him without probable cause.  Id. ¶¶ 43, 47.  Gonzalez adds that, as the incident was caught on videotape, Officer Okagawa's "positive" identification of him was a "deliberate misrepresentation."  Id. ¶¶ 53, 54.  Although at a "show up" Querido identified Gonzalez as the person who had scratched his car, Gonzalez describes the "show-up" as having been suggestive because Querido saw Gonzalez in police custody surrounded by uniformed officers, and also allegedly saw Officer Okagawa berating Gonzalez.  Id. ¶¶ 62(h) & (i).

Gonzalez says that Querido had actually identified another man as the suspect earlier in the evening.  Gonzalez also says that a security guard heard Querido say that his car had been keyed by a "Samoan."  Id. ¶ 62(l).  Querido allegedly said that the person who had scratched his car was wearing a white shirt, while Gonzalez says his shirt was not white.  Id. ¶ 71(a);

Complaint, Ex. 8 (police report indicating that Gonzalez was wearing a green shirt), PageID # 38.

As reported by Gonzalez, the initial charge against him was criminal property damage in the third degree, in violation of section 708-822(1)(c) of Hawaii Revised Statutes. That statute, says Gonzalez, applies when a "person intentionally damages the agricultural equipment, supplies, or products or aquacultural equipment, supplies, or products of another, including trees, bushes, or any other plant and livestock of another, without the other's consent, in an amount exceeding $100." See Complaint ¶ 22. Criminal property damage in the third degree is a misdemeanor. See Haw. Rev. Stat. § 708-822(2). However, when he appeared in court on November 7, 2011, Gonzalez was allegedly served with a written complaint charging him with a violation of section 708-822(1)(c). See id. ¶ 28. He says that, when he appeared at a rescheduled court hearing on December 12, 2011, the charge was amended to be a violation of section 708-822(1)(b), which applies when a "person intentionally or knowingly damages the property of another, without the other's consent, in an amount exceeding $500." See id. ¶ 29. At a state-court hearing on December 12, 2011, his arraignment and plea were set for January 4, 2012. See id. On January 4, 2012, Gonzalez pled "not guilty" and requested a jury trial. He was told to appear in First Circuit Court on January 17, 2012. See id. ¶ 30.

On January 17, 2012, Gonzalez went to the First Circuit Court, where he says he was told that the prosecution had decided to reduce the charge to criminal property damage in the fourth degree in violation of section 708-823 of Hawaii Revised Statutes, a petty misdemeanor. That section states, "A person commits the offense of criminal property damage in the fourth degree if by means other than fire, the person intentionally or knowingly damages the property of another without the other's consent." Gonzalez says that, with the reduction in the charge, he had no right to a jury trial and was therefore sent back to the state district court. See Complaint ¶ 31.

Gonzalez appeared in state district court for trial on April 9, 2012. Because the prosecution was not ready to proceed, the trial was continued. See Complaint ¶ 32. The trial was continued again on May 21, 2012. ¶ 33. When the prosecution requested yet another continuance of the trial on June 20, 2012, the state district court judge denied the request. That same day, Gonzalez's attorney moved for dismissal of the charge with prejudice. That request was granted. See id. ¶ 34.

Gonzalez alleges that "Okagawa and Cadiz, along with the Honolulu City Prosecutor's Office, were well aware from the outset that the alleged Charge of Criminal Property Damage in the Third Degree totally lacked merit, yet chose to proceed." Complaint ¶ 35. Gonzalez says that they conducted a baseless and

malicious prosecution of him, although he does not actually plead a malicious prosecution cause of action.  Id. ¶ 38.

Gonzalez also sues HPD Officers Reynold Kam, Daniel Aoki, Jon Nguyen, Everette Hung, and the Chief of HPD, Louis M. Kealoha.  See id. ¶¶ 6-10.  It is not entirely clear why these five individual Defendants are named as Defendants.  At the hearing, Gonzalez says he named these individual as Defendants because they helped to complete the arrest process.  Hung is alleged to have set bail at $500.  See id. ¶ 23.  Nguyen is alleged to have conducted a custodial search of Gonzalez and to have issued him a receipt for items seized.  See id. ¶ 24.  Aoki is alleged to have "completed the Arrest Report."  Id. ¶ 25.

**III.     RULE 12(b)(6) STANDARD.**

Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a

motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677.

**IV.    ANALYSIS.**

The Complaint asserts causes of action for "Consitutional and/or 42 U.S.C. Section 1983 violations," intentional infliction of emotional distress and stress,

negligence, defamation, "negligent training, supervision, and/or discipline," false imprisonment, and conversion. Of these, only the "Consitutional and/or 42 U.S.C. Section 1983 violations" and negligence claims have been asserted against the City. Only some of these claims are the subject of the present motion to dismiss.

### A. Constitutional Claims Against the City.

With respect to the alleged "Consitutional and/or 42 U.S.C. Section 1983 violations," the City seeks summary judgment, arguing that, for purposes of § 1983, the Complaint inadequately pleads an unconstitutional policy.

Section 1983 provides, in relevant part:

> [E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party in an action at law, suit in equity or other proper proceeding to redress.

42 U.S.C. § 1983.

Local governmental bodies such as the City are "persons" that may be sued under § 1983. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). However, under § 1983, the City is only liable for its own actions. The City is not liable under § 1983 based on respondeat superior liability, as it is with respect to negligence claims. Id. at 694. Municipal liability under § 1983 may be established in one of three ways.

> First, the plaintiff may prove that a city
> employee committed the alleged constitutional
> violation pursuant to a formal governmental
> policy or a longstanding practice or custom
> which constitutes the standard operating
> procedure of the local governmental entity.
> Second, the plaintiff may establish that the
> individual who committed the constitutional
> tort was an official with final policy-making
> authority and that the challenged action
> itself thus constituted an act of official
> governmental policy.  Whether a particular
> official has final policy-making authority is
> a question of state law.  Third, the
> plaintiff may prove that an official with
> final policy-making authority ratified a
> subordinate's unconstitutional decision or
> action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1993) (citations and internal quotations omitted); accord Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (2012) ("To create liability under § 1983, the constitutional violation must be caused by a policy, practice, or custom of the entity, or be the result of an order by a policy-making officer." (quotations and citations omitted)).

   The court agrees that Gonzalez does not adequately plead municipal liability under § 1983.  At best, the Complaint alleges that Defendants Cadiz, Okagawa, Hung, Nguyen, Kam, Aoki, Kealoha, and other Doe Defendants "acted and/or purported to act herein under color of statutes, ordinances, rules, regulations, customs, policies, practices, and/or usage of the State of Hawaii, City and County of Honolulu, and/or the Honolulu Police Department when they arrested Plaintiff."  See Complaint ¶ 77.

Because the Complaint does not plead enough specific facts to state a municipal liability claim under § 1983, it does not satisfy the minimal pleading standard set forth in <u>Twombly</u> and <u>Iqbal</u>.  Accordingly, the § 1983 claim based on alleged violations of the federal Constitution that is asserted against the City is dismissed.

    To the extent Gonzalez is asserting a § 1983 claim based on violations of the Hawaii constitution, that claim fails because § 1983 is a vehicle for seeking redress for violations of only federal law.  See <u>Cornejo v. County of San Diego</u>, 504 F.3d 853, 855 n.3 (9th Cir. 2007) ("We note that a claim for violation of state law is not cognizable under § 1983."); <u>Campbell v. Burt</u>, 141 F.3d 927, 930 (9th Cir. 1998) ("As a general rule, a violation of state law does not lead to liability under § 1983."); <u>Ybarra v. Bastian</u>, 647 F.2d 891, 892 (9th Cir. 1981) ("Section 1983 protects against the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.  Only federal rights, privileges, or immunities are protected by the section.  Violations of state law alone are insufficient.").

    At the hearing on the motion, the court asked Gonzalez whether he was asserting a direct claim under the Hawaii constitution.  Gonzalez was unable to articulate whether he was asserting such a claim.  Assuming that he is, the court does not reach the issue of whether Gonzalez may assert such a claim, as

that issue has not been briefed. If Gonzalez chooses to file an Amended Complaint, he should clearly articulate whether he is asserting claims directly under the state constitution (that is, not through the vehicle of a statute).

**B.   Negligence Claims.**

To prevail on a negligence claim, a plaintiff must prove:

> (1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
>
> (2) A failure on the defendant's part to conform to the standard required: a breach of the duty;
>
> (3) A reasonably close causal connection between the conduct and the resulting injury[;] and
>
> (4) Actual loss or damage resulting to the interests of another.

Takayama v. Kaiser Found. Hosp., 82 Haw. 486, 498-99, 923 P.2d 903, 915-16 (1996) (quoting Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 385, 742 P.2d 377, 383 (1987)).

A viable negligence claim requires that a defendant have owed a duty to the plaintiff. See Pulawa v. GTE Hawaiian Tel, 112 Haw. 3, 11, 143 P.3d 1205, 1213 (2006); Janssen v. Am. Haw. Cruises, Inc., 69 Haw. 31, 34, 731 P.2d 163, 34 (1987). The Hawaii Supreme Court has stated:

> [I]n considering whether to impose a duty of reasonable care on a defendant, we recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done. In determining whether or not a duty is owed, we must weigh the considerations of policy which favor the plaintiff's recovery against those which favor limiting the defendant's liability. The question of whether one owes a duty to another must be decided on a case-by-case basis.

Id. at 12, 143 P.3d at 1214 (quotations and citation omitted) (format altered).

The Hawaii Supreme Court has identified several factors relevant to imposing a duty:

> Whether a special relationship exists, the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

Id. (quotations and citation omitted) (format altered).

A defendant owes a duty of care only "to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct

13

unreasonably dangerous." Id. (quotations and citations omitted). In this context, the test for foreseeability "'is whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it.'" Pulawa, 112 Haw. at 12, 143 P.2d at 1214 (quoting Knodle, 69 Haw. at 388, 742 P.2d at 385).  Whether a duty exists is a question of law for the court to resolve.  Pulawa, 112 Haw. at 13, 143 P.2d at 1215; Janssen, 69 Haw. at 34, 731 P.2d at 34 ("The existence of a duty is a question of law.").

   In the present case, the negligence claim is insufficiently pled.  Gonzalez makes the conclusory allegation that Defendants "negligently caused Plaintiff to suffer physical injuries, chest pains, mental anguish, severe emotional distress, anxiety, embarrassment, humiliation, worry, and anger in amounts to be proven at trial."  While a mere "formulaic recitation of the elements of a cause of action" would be insufficient, Gonzalez does not make even a formulaic recitation. Twombly, 550 U.S. at 555.  It is unclear which Defendant was allegedly negligent and what duty each Defendant might have breached.  Accordingly, the negligence claim is dismissed without prejudice.

### C. Official Capacity Claims Against Individual Defendants.

City Defendants unpersuasively argue for dismissal of the official capacity claims asserted against the individual Defendants, claiming that those claims are duplicative of the claims against the City. City Defendants address this argument in only eleven lines of text and include no discussion as to how the claims are duplicative.

For example, as City Defendants note in their motion, the City is named in only two of the counts. City Defendants appear to be seeking dismissal of the official capacity claims in the other counts, although City Defendants do not explain how those claims could duplicate nonexistent claims against the City. Even with respect to the official capacity § 1983 claim, City Defendants fail to show that individual liability on the part of all Defendants mirrors liability on the part of the City. For example, because it is not clear that all individual Defendants have the kind of final policy-making authority required for the City to be liable, it may be that official capacity claims against some individual Defendants rest on grounds inapplicable to the City as a party. See Gillette, 979 F.2d at 1346-47.

Under these circumstances, City Defendants do not demonstrate that dismissal of the official capacity claims is appropriate.

**D.     Gonzalez May File An Amended Complaint.**

No later than January 21, 2013, Gonzalez may file an Amended Complaint that cures the deficiencies discussed above.

With respect to the constitutional claims, Gonzalez may not reassert § 1983 claims against the City, unless he alleges facts supporting municipal liability. If Gonzalez chooses to file an Amended Complaint, he should also clarify whether he is attempting to assert direct violations of the Hawaii constitution.

For all claims asserted in any Amended Complaint, Gonzalez should identify which Defendant did what. That is, Gonzalez should not simply bring a claim for negligence, asserting that "Defendants were negligent." Instead, Gonzalez should include factual allegations supporting a negligence claim with respect to each Defendant named in that claim. Each Defendant must be on notice as to how he was allegedly negligent, and the Amended Complaint must include facts demonstrating that negligence.

Gonzalez should also consider simplifying his claims so that they are asserted solely against Defendants who allegedly committed the wrongful acts complained of. In formulating any Amended Complaint, Gonzalez should consider whether continuing to name all of the present Defendants is appropriate, especially because it is unclear that all Defendants actually caused

Gonzalez harm. It may well be that naming fewer Defendants will make proceedings in this case easier not just for Defendants, but also for Gonzalez. If, for example, Gonzalez decides to drop Querido as a Defendant, there will be no need for the hearing on Querido's motion for summary judgment presently scheduled for February 4, 2012. Of course, if Gonzalez chooses to proceed against Querido, the motion will be deemed to apply to any of the same claims asserted against Querido in an Amended Complaint.

**V.      CONCLUSION.**

The motion to dismiss is granted in part and is denied in part as set forth above. Gonzalez may file an Amended Complaint no later than January 21, 2013. If he fails to meet that deadline, the case will proceed with the claims left remaining by this order, and with any pending motions. The remaining claims include: 1) First Cause of Action--constitutional claims asserted except for claims against the City under § 1983; 2) Second and Eighth Causes of Action--intentional infliction of emotional distress and stress; 3) Fourth Cause of Action--defamation; 4) Fifth Cause of Action--negligent training, supervision, and/or discipline; 5) Sixth Cause of Action--false imprisonment; and 6) Seventh Cause of Action--conversion.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, December 27, 2012.



        /s/ Susan Oki Mollway
        Susan Oki Mollway
        Chief United States District Judge

Gonzalez v. Okagawa, et al.; Civ. No. 12-00368 SOM/KSC; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS