IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANTONIO D. GONZALEZ, JR., | ) | CIVIL NO. 12-00368 RLP |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | (1) GRANTING CITY AND COUNTY |
| vs. | ) | OF HONOLULU'S MOTION FOR |
| | ) | SUMMARY JUDGMENT; (2) GRANTING |
| JENSEN OKAGAWA; ROBERTO CADIZ; | ) | JENSEN OKAGAWA AND ROBERTO |
| CITY AND COUNTY OF HONOLULU, | ) | CADIZ'S MOTION FOR SUMMARY |
| | ) | JUDGMENT; AND (3) DENYING |
| Defendants. | ) | PLAINTIFF'S AMENDED MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| _____ | ) | |

MEMORANDUM OPINION AND ORDER (1) GRANTING CITY AND COUNTY OF
HONOLULU'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING JENSEN
OKAGAWA AND ROBERTO CADIZ'S MOTION FOR SUMMARY JUDGMENT; AND
(3) DENYING PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT

The following motions came on for hearing on May 31,
2013, at 11:00 a.m.:

(1) Defendant City and County of Honolulu's Counter-
Motion For Summary Judgment ("City's Motion");

(2) Defendants Jensen Okagawa and Roberto Cadiz's
Motion for Summary Judgment ("Officer Defendants' Motion"); and

(3) Plaintiff Antonio Diaz Gonzalez, Jr.'s Amended
Motion of Summary Judgment on Any and All Claims Asserted by
Plaintiff in the Complaint filed 6/27/12 ("Plaintiff's Motion").

Plaintiff Antonio D. Gonzalez, Jr. appeared pro se.
Curtis Sherwood, Esq. and Marguerite Nozaki, Esq. appeared on
behalf of the City, Defendant Okagawa, and Defendant Cadiz.
After careful consideration of the Motions, the supporting and
opposing memoranda, the concise statements of fact, declarations,

and exhibits attached thereto, and the record established in this

action, the Court GRANTS the City's Motion, GRANTS the Officer

Defendants' Motion and DENIES Plaintiff's Motion.

<u>PROCEDURAL HISTORY</u>

Plaintiff alleges that he was arrested by officers of

the Honolulu Police Department ("HPD") without probable cause for

criminal property damage in the third degree on the evening of

October 20, 2011, when Plaintiff went to a Wal-Mart store on Oahu

(the "Store").  <u>See</u> Amended Compl., ECF No. 96.  The criminal

charge against Plaintiff was eventually dismissed with prejudice.

<u>Id.</u> ¶ 33.

Plaintiff filed his initial Complaint on June 27, 2012.

ECF No. 1.  The City moved for dismissal of the Complaint.  ECF

No. 39.  Before the court issued a decision on the City's motion

to dismiss, Plaintiff filed a "Motion of Summary Judgment on any

and all claims asserted by Plaintiff in the Complaint filed

06/27/12."  <u>See</u> ECF No. 93.  On the next day, the court granted

in part and denied in part the City's motion to dismiss and gave

Plaintiff leave to file an amended complaint.  ECF No. 94.

Plaintiff filed an Amended Complaint for Damages on January 3,

2013.  Amended Compl., ECF No. 96.  On March 11, 2013, the City

Defendants filed a Counter Motion for Summary Judgment.  City's

Mot., ECF No. 113.  The Officer Defendants filed their Motion for

Summary Judgment on April 12, 2013.  Officer Defs.' Mot., ECF No.

123.   On April 26, 2013, Plaintiff filed an "Amended Motion of Summary Judgment on Any and All Claims Asserted by Plaintiff in the Complaint Filed 06/27/12."  Pl.'s Mot., ECF No. 126.  Based on the filing of the Amended Motion, the Court dismissed as moot Plaintiff's initial motion for summary judgment.  ECF No. 128. All three pending motions for summary judgment came on for hearing on May 31, 2013.

<u>BACKGROUND FACTS</u>

The parties' different descriptions of the incident are detailed below.

**I.  Defendants' Account of the Events**

In support of their Motions, Defendants submitted declarations from Defendant Cadiz and Defendant Okagawa, and an affidavit from Jonathan Querido.  <u>See</u> City's Separate and Concise Counter-Statement of Facts in Support of its Counter-Motion for Summary Judgment (ECF No. 112); Officer Defendants' Separate and Concise Statement of Facts in Support of Their Motion for Summary Judgment (ECF No. 124); and Defendants' Separate and Concise Counter-Statement of Facts in Opposition to Plaintiff's Motion (ECF No. 133).

On the evening in question, Jonathan Querido drove his car to the Store.  Affidavit of Jonathan Querido ("Querido Aff.") ¶ 3.  After Mr. Querido parked his car in the parking lot, he observed a white truck slow and stop behind his parked vehicle.

Querido Aff. ¶ 6.  Mr. Querido noticed that the window of the white truck was rolled down and the driver was staring at Mr. Querido.  Querido Aff. ¶ 6.  Mr. Querido waited at the entrance of the Store to watch his vehicle.  Querido Aff. ¶ 8.  Mr. Querido observed the same white truck that had stopped behind his car park a couple of stalls away.  Querido Aff. ¶ 8.  Mr. Querido observed a man exit the white truck and walk along the driver's side of Mr. Querido's car.  Querido Aff. ¶ 9.  As the man walked passed the front end of Mr. Querido's car, Mr. Querido observed the man extend his arm over the hood.  Querido Aff. ¶ 10.  Mr. Querido checked his car and found a deep scratch on the driver's side door and hood of his vehicle.  Querido Aff. ¶ 11.  Mr. Querido called the police to report the incident.  Querido Aff. ¶ 13.

Defendant Cadiz responded to the call at approximately 9:15 p.m.  Declaration of Roberto Cadiz ("Cadiz Decl.") ¶ 6. Shortly after he arrived, Defendant Cadiz met with and interviewed Mr. Querido.  Cadiz Decl. ¶ 7.  Mr. Querido told Defendant Cadiz what he had earlier observed.  Cadiz Decl. ¶¶ 8-12; Querido Aff. ¶ 14.  Mr. Querido told Defendant Cadiz that his car did not have the scratch marks prior to driving to the Store, that he did not give anyone permission to damage his car, and that he estimated the damage to his car was approximately $1000. Querido Aff. ¶ 12; Cadiz Decl. ¶ 13.  Mr. Querido identified the

4

white truck with license plate PTR 107 as the truck he saw the man exit from.  Querido Aff. ¶ 2; Cadiz Decl. ¶ 16.  Mr. Querido described the man who exited the white truck as a tall older bald man wearing a white shirt.  Querido Aff. ¶ 2; Cadiz Decl. ¶ 16.

Defendant Okagawa arrived at the scene shortly after Defendant Cadiz, but did not call into dispatch that he was at the location.  Declaration of Jensen Okagawa, dated April 12, 2013 ("Okagawa Decl. I") ¶ 9.  Defendant Okagawa stated that he did not typically respond to misdemeanor calls, but he decided to respond to this particular call because he felt that there was a potential risk to officer safety because the suspect was still in the area.  Okagawa Decl. I ¶ 7-8.  Defendant Okagawa stated that he did not call into dispatch upon his arrival because he "did not want to be seen as micro-managing the officers" in his sector.  Okagawa Decl. I ¶ 10.  After Defendant Okagawa arrived on scene, he went over to Mr. Querido's vehicle and observed two large scratches along the driver's side and on the hood of the vehicle.  Okagawa Decl. I ¶¶ 14-16.  Defendant Okagawa believed that the scratches were recently made because he could see a hanging thread of paint at the end of one of the scratches.  Okagawa Decl. I ¶ 17.

Approximately ten minutes after Defendant Cadiz arrived on scene he called into dispatch to request that dispatch run the license plate of the white truck.  Cadiz Decl. ¶ 30; Declaration

of Jensen Okagawa, dated May 8, 2013 ("Okagawa Decl. II") ¶ 11;
Ex. J to Defs.' Counter-Statement, ECF No. 133-15 (recordings of
radio transmission on the night of the incident).  Dispatch
responded almost immediately that the white truck was registered
to "Antonio Gonzalez."  Cadiz Decl. ¶ 31; Okagawa Decl. II ¶ 14.

        Defendant Cadiz went into the Store to look for a
person matching the description provided by Mr. Querido.  Cadiz
Decl. ¶ 17.  Defendant Cadiz located a person who fit Mr.
Querido's description of the suspect and escorted that person
outside the Store.  Cadiz Decl. ¶¶ 17-18.  A field show-up was
conducted.  Cadiz Decl. ¶ 17.  Mr. Querido said that the person
was not the individual that damaged his vehicle.  Cadiz Decl.
¶ 19.

        Defendant Okagawa spoke with the Store security and
learned that the Store had a video system in the parking lot area
that likely captured the incident.  Okagawa Decl. I ¶ 21.
Defendant Okagawa then went with Store security personnel and
reviewed the video captured of the parking lot that evening.
Okagawa Decl. I ¶ 22.  Defendant Okagawa observed on the video a
man exit from a white truck, walk next to Mr. Querido's vehicle,
extend his arm over the hood of Mr. Querido's car, and then walk
toward the Store entrance.  Okagawa Decl. I ¶ 23.  A copy of the
video that Defendant Okagawa viewed at the Store was later
obtained by HPD and was attached as an exhibit to Defendant

Okagawa's Declaration.  Ex. A to Okagawa Decl. I, ECF No. 116;
Okagawa Decl. I ¶ 24.  After viewing the video, Defendant Okagawa
met with the other officers outside the Store.  Okagawa Decl. I
¶ 25.

Defendant Cadiz went into the Store again and contacted
the Store's personnel to ask if the intercom system could be used
to summon the driver of the white truck to come to the customer
service counter.  Cadiz Decl. ¶ 23.  A request was made over the
Store's intercom, but no one responded.  Cadiz Decl. ¶ 23.
Defendant Cadiz then went back outside the store and spoke with
Defendant Okagawa who told Defendant Cadiz that he had viewed a
video on the Store's surveillance system that had captured the
incident.  Cadiz Decl. ¶ 25.  Defendant Cadiz went into the Store
again to try to locate the suspect.  Cadiz Decl. ¶ 26.  At
approximately 10:00 p.m., Defendant Cadiz saw an older bald man
standing in line at one of the registers.  Cadiz Decl. ¶ 27.  The
man Defendant Cadiz approached was asked if he was the driver of
the white truck, to which Plaintiff replied "yes."  Cadiz Decl.
¶ 29.  Defendant Cadiz then asked Plaintiff to produce
identification.  Cadiz Decl. ¶ 30.  Plaintiff showed Defendant
Cadiz a Hawaii driver's license with the name "Antonio Gonzalez,
Jr." and a photograph bearing his resemblance.  Cadiz Decl. ¶ 30.
Defendant Cadiz then asked Plaintiff to accompany him outside,
and Plaintiff agreed to do so.  Cadiz Decl. ¶ 32.

At this time, Defendant Okagawa called into dispatch that he was at the location.  Okagawa Decl. I ¶ 10.

Outside the store a field show-up was conducted. Querido Aff. ¶ 2; Okagawa Decl. I ¶ 28.  Mr. Querido identified Plaintiff as the man he observed exit the white truck and scratch his vehicle.  Querido Aff. ¶ 19; Okagawa Decl. I ¶ 30; Cadiz Decl. ¶ 33.  Shortly after Mr. Querido identified Plaintiff, Defendant Okagawa informed Defendant Cadiz that Plaintiff was the same man that Defendant Okagawa had seen on the surveillance video.  Cadiz Decl. ¶ 35.  Defendant Okagawa asked Mr. Querido if he was going to file a criminal complaint against Plaintiff, to which Mr. Querido replied that he wanted to have Plaintiff prosecuted for the damage done to his vehicle.  Okagawa Decl. I ¶ 35.  Defendant Okagawa spoke with Defendant Cadiz and told him that he believed that probable cause existed to arrest Plaintiff. Okagawa Decl. I ¶ 38.

Defendant Cadiz then informed Plaintiff that he was under arrest for criminal property damage in the third degree. Cadiz Decl. ¶ 36.  Plaintiff was then placed in handcuffs.  Cadiz Decl. ¶ 28.  Plaintiff was very argumentative and denied damaging any vehicle, but the arrest occurred without incident.  Cadiz Decl. ¶ 39.  Plaintiff was then brought to the Pearl City Police Substation by another officer.  Okagawa Decl. I ¶ 40.

Plaintiff's truck was not seized or even touched by the

8

police officers on the night of the incident.  Okagawa Decl. I
¶ 43.  Neither Defendant Cadiz nor Defendant Okagawa took
Plaintiff's truck from him, nor did they instruct any other
officer to do so.  Okagawa Decl. I ¶ 44.

## II. Plaintiff's Account of the Events

Plaintiff filed an untimely Separate and Concise
Statement of Facts both in support of his Amended Motion and in
opposition to both of the Defendants' Motions.  See Pl.'s
Statement, ECF No. 130.  Plaintiff's Concise Statement does not
specifically accept or deny the facts set forth in Defendants'
Concise Statements.  Compare ECF Nos. 112 and 124 with ECF No.
130.  Instead, Plaintiff's Concise Statement responds to some of
the facts set forth in Defendants' Concise Statements by listing
facts and arguments, some of which purport to controvert
Defendants' facts.  Id.  Plaintiff submitted excerpts of
Interrogatory Responses from Defendant Cadiz and Mr. Querido.
Exs. 2 and 3 to Pl.'s Statement, ECF Nos. 130-3, 130-4.  The only
declaration submitted by Plaintiff is the Declaration of
Defendant Okagawa, dated April 12, 2013, which was included with
Defendants' Concise Statements.  See Ex. 13 to Pl.'s Statement,
ECF No. 130-13.  Plaintiff did not provide a declaration or
affidavit from himself or any other witness to support the facts
alleged.  Although Plaintiff references in his Motion that he
spoke with a "Confidential Source" and an assistant manager at

the Store, such statements are not sufficient under Rule 56 and
will not be considered by the Court.  <u>See</u> Pl.'s Mot., ECF No.
126, at 35-36; Pl.'s Opp. to Officer Defs.' Mot., ECF No. 127, at
27, 54, 64-65.

　　　　Most of the assertions in Plaintiff's Concise Statement
are not statements of fact, but are instead arguments related to
what the police officers allegedly failed to do or should have
done differently on the night of the incident.  <u>See</u> Pl.'s
Statement, ECF No. 130, at 2-3, 4-6, 12-14, 16-20, 22-23.  The
Court will only address the facts presented in Plaintiff's
Statement.  Most of Plaintiff's factual assertions are
inadmissible because they lack foundation, are not based on
personal knowledge, and/or are speculative and conclusory.  Only
admissible evidence can be considered on a motion for summary
judgment.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Orr v. Bank of Am.</u>, 285
F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider
admissible evidence in ruling on a motion for summary
judgment.").  Plaintiff does not properly authenticate any of the
documents attached to Plaintiff's Concise Statement or to his
Motion.  Authentication is a "condition precedent to
admissibility," and this condition is satisfied by "evidence
sufficient to support a finding that the matter in question is
what its proponent claims."  Fed. R. Evid. 901(a).  The Ninth
Circuit has "repeatedly held that unauthenticated documents

10

cannot be considered in a motion for summary judgment." <u>Orr</u>, 285 F.3d at 773 (citations omitted).  Finally, material facts submitted by Defendants that are not controverted by Plaintiff's facts or evidence in the record will be deemed admitted for the purpose of disposing of these Motions.  <u>See</u> LR 56.1(g); <u>Television Events & Mktg., Inc. v. AMCON Distrib., Co.</u>, 484 F. Supp. 2d 1124, 1128 n.1 (D. Haw. 2006).

When Mr. Querido called the police to report the incident, Mr. Querido described the suspect as a "Samoan male wearing white shirt and shorts."  Pl.'s Statement, ECF NO. 130, at 2.  To support this statement, Plaintiff attached the HPD "Incident Recall" sheet.  Ex. 1 to Pl.'s Statement, ECF No. 130-2.  This document states:  "IN THE PLOT LOWER LVL FRNTG NEXT TO A BRN ACURA / SAM ML JST KEYED HIS CAR / ML WEARING WHT SHIRT AND SHORTS / ML IS SILL IN THE AREA." <u>Id.</u>  Although Plaintiff did not submit a declaration authenticating this document, Defendant Okagawa states in his declaration that he reviewed "Incident Recall Sheets, or CADS, prepared by dispatch, which summarize the radio transmissions made that evening."  Okagawa Decl. II ¶ 6.

Plaintiff is an African-American male and wore a green shirt and beige shorts on the evening in question.  Querido Interrog. Responses, Ex. 3 to Pl.'s Statement, ECF No. 130-4, at 7 (stating that Plaintiff was wearing "a faded green t-shirt" when Mr. Querido identified him); Pl.'s Dep., ECF Nos. 112-5,

11

124-8, 133-9, 78:13-17.   Plaintiff attached to his Motion a mug
shot, which depicts a male wearing a green shirt.   Ex. 17 to
Pl.'s Mot., ECF No. 127-18.   Plaintiff also cites Defendant
Okagawa's report, which states that Plaintiff was wearing a green
t-shirt and beige shorts.   Ex. 4 to Pl.'s Statement, ECF No. 130-
5, at 1.   Neither the mug shot nor the report are admissible
because Plaintiff did not provide any declaration or affidavit to
authenticate these documents or lay a proper foundation.
However, a properly authenticated photograph of Plaintiff on the
night of the incident was submitted with the Officer Defendants'
Concise Statement, which shows Plaintiff wearing a green t-shirt.
Ex. B to Officer Defs.' Statement, ECF No. 124-6; Okagawa Decl. I
¶ 32.

Plaintiff does not dispute that Mr. Querido also
described the person he saw scratch his car as a tall, bald,
older man, possibly in his 50s.   See ECF No. 130 at 6-7.

Plaintiff asserts, without citation to any evidence,
that he was not the individual who drove "his white Mazda truck,"
license plate PTR 107, to the Store that evening.   Pl.'s
Statement, ECF No. 130, at 3, 4, 8.   Plaintiff did not provide a
declaration or affidavit in support of his Motion or in
Opposition to Defendants' Motions.   Plaintiff repeatedly refused
to answer questions regarding the incident during his deposition
stating that he refused to do so on the basis of his Fifth

12

Amendment right against self-incrimination.  See Pl.'s Dep., ECF
Nos. 112-12, 124-8, 133-9, at 15:6-72:17.  Without admissible
evidence to support this statement, the Court cannot consider it.

Plaintiff states, without citation to any evidence,
that Defendant Cadiz did not inquire whether he was the "driver"
of the white truck when Defendant Cadiz approached Plaintiff at
the register inside the Store.  Pl.'s Statement, ECF No. 130, at
9.  As noted above, Plaintiff did not provide a declaration or
affidavit in support of his Motion and refused to answer
questions at his deposition regarding the incident.  See Pl.'s
Dep., ECF Nos. 112-12, 124-8, 133-9, at 15:6-72:17.  Without
admissible evidence to support this statement, the Court cannot
consider it.

Plaintiff states that he did not have "on his person" a
Hawaii driver's license on the evening in question.  Pl.'s
Statement, ECF No. 130, at 9.  Plaintiff cites Defendant Cadiz's
report in support of this statement.  Id.  However, Defendant
Cadiz's report states that Defendant Cadiz approached Plaintiff
"standing in line at the check out register" and "inquired if he
was the driver of the suspect's vehicle, PTR 107, to which
[Plaintiff] replied 'yes'" and then Plaintiff "was identified via
his Hawaii Driver's License as Antonio GONZALEZ."  Ex. 7 to Pl.'s
Statement, ECF No. 130-8.  Even assuming that this document was
properly authenticated, there is nothing in Defendant Cadiz's

13

report to support Plaintiff's assertion that he did not have his
driver's license on his person.  Without admissible evidence to
support this statement, the Court cannot consider it.

Plaintiff asserts that he was placed under arrest at
22:00 hours while he was inside the Store at the register.  Pl.'s
Statement, ECF No. 130, at 10.  Although not referenced by
Plaintiff in his Concise Statement, Plaintiff testified at his
deposition that Defendant Cadiz told Plaintiff that he was under
arrest at the register inside the Store.

> Q: Did any of the officers tell you that you
> were under arrest before you were taken
> outside?
>
> A: Yeah.
>
> Q: Who did?
>
> A: Cadiz.
>
> Q: Cadiz told you that you were under arrest
> while you were inside of the Wal-Mart?
>
> A: Yeah.
>
> Q: That's a yes?
>
> A: (Witness nods head up and down.)
>
> Q: Was that there at the checkout?
>
> A: Yeah.

Pl.'s Dep., ECF Nos. 112-12, 124-8, 133-9, at 79:7-19.

Additionally, Defendant Cadiz responded to an interrogatory that
Plaintiff was "placed under arrest at 2200 hours."  Cadiz

14

Interrog. Responses, Ex. K to Defs.' Statement, ECF No. 133-16[1].
Plaintiff's Store receipt from the night of the incident shows
that he completed his transaction at the register inside the
Store at 22:00:30 hours.  Ex. 9 to Pl.'s Statement, ECF No. 130-
10; Ex. C to Pl.'s Dep., ECF No. 112-12, at 28.

        Mr. Querido saw three uniform police officers escort
Plaintiff along the front of the Store to within a few yards of
Mr. Querido.  Querido Interrog. Responses, ECF No. 130-4, at 3.
Defendant Cadiz escorted Plaintiff to Mr. Querido's location
"close enough for [Mr. Querido] to make a positive
identification."  Querido Interrog. Responses, ECF No. 130-4, at
2.  Defendant Cadiz asked Mr. Querido if he could identify the
person who scratched his car.  Querido Interrog. Responses, ECF
No. 130-4, at 2.

        Plaintiff notes that the HPD "Incident Recall" sheet
reflects that Defendant Okagawa did not call into dispatch to
report that he was at the location until 21:58 hours, two minutes
before Plaintiff asserts he was placed under arrest.  Pl.'s
Statement, ECF No. 130, at 17-19 (citing Ex. 1 to Pl.'s
Statement, ECF No. 130-2).  However, Plaintiff offers no facts to

---

        [1] The copies of the interrogatory responses provided by
Plaintiff are incomplete and do not contain this response.  See
Ex. 2 to Pl.'s Motion, ECF No. 126-3; Ex. 2 to Pl.'s Statement,
ECF No. 130-3.  However, Defendants provided Defendant Cadiz's
complete interrogatory responses with their Concise Statements.
See Ex. K to Defs.' Statement, ECF No. 133-16.

controvert Defendant Okagawa's statements in his declaration that
he was on scene prior to that time, but did not call into
dispatch until later.  See id.

Plaintiff states that when he was outside Defendant
Okagawa "berated" him stating "The guy said you scratched his
car.  He was watching you from inside the store."  Pl.'s
Statement, ECF No. 130, at 22.  Plaintiff replied "It was not
me?"  Id.  Defendant Okagawa stated "That's not what the camera
say."  Id.  Plaintiff states that after Defendant Okagawa said
this to him, Defendant Okagawa walked approximately thirteen
yards away and spoke with Mr. Querido.  Id. at 23.  As noted
above, Plaintiff did not provide a declaration or affidavit in
support of his Motion and refused to answer questions regarding
the incident during his deposition.  See generally Pl.'s Dep.,
ECF Nos. 112-12, 124-8, 133-9, at 15:6-72:17.  Without admissible
evidence to support these statements, the Court cannot consider
them.

Plaintiff does not dispute that he had one prior
arrest, but notes that he was eventually cleared of the charges.
Pl.'s Statement, ECF No. 130, at 24.  In addition, Plaintiff does
not dispute, or even address, the following facts set forth in
Defendants' Concise Statements.  See ECF No. 130.  Plaintiff's
truck was never seized or even touched by the police officers.
See ECF No. 124 at 4.  Defendant Cadiz and Defendant Okagawa did

not take Plaintiff's truck from him or instruct any other officer

to do so.  Id.  Defendant Cadiz and Defendant Okagawa did not

know Plaintiff and were not familiar with him prior to the night

of the incident.  Id.  Defendant Cadiz and Defendant Okagawa did

not harbor any ill will toward Plaintiff on the night of the

incident.  Id.  The Court deems these facts admitted by

Plaintiff.  See LR 56.1(g).

DISCUSSION

Summary judgment is appropriate where there is no

genuine issue of material fact and the moving party is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact

is material when, under the governing substantive law, it could

affect the outcome of the case.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  A dispute about a material fact is

genuine if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Id.  "Disputes over

irrelevant or unnecessary facts will not preclude a grant of

summary judgment."  T.W. Elec. Serv., Inc. v. Pac. Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment bears the initial

burden of establishing the absence of a genuine issue of material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The

moving party can satisfy this burden in two ways: (1) by

presenting evidence that negates an essential element of the

17

nonmoving party's case, or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23.

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. Courts have "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003). "Only admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).

Where conflicting evidence is presented by both parties, "the judge must assume the truth of the evidence set

forth by the nonmoving party with respect to that fact." T.W.
Elec. Serv., 809 F.2d at 631.  Evidence and inferences must be
construed in the light most favorable to the nonmoving party.
Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005).
Courts do not make credibility determinations or weigh
conflicting evidence at the summary judgment stage.  Id.; see
also Nelson v. City of Davis, 571 F.3d 924, 928 (9th Cir. 2009)
("credibility determinations, the weighing of the evidence, and
the drawing of legitimate inferences from the facts are jury
functions, not those of a judge.") (citations omitted).  However,
inferences may be drawn from underlying facts not in dispute, as
well as from disputed facts that the judge is required to resolve
in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at
631.

I.   **The Court Will Consider the Merits of Plaintiff's
Motion.**

          Defendants argue that Plaintiff's Motion should not be
considered by the Court because it is based on Plaintiff's prior
complaint and was not filed timely.  See Defs.' Opp. to Pl.'s
Mot., ECF No. 132, at 3-4.  A pro se litigant's filings must be
read more liberally than those drafted by counsel.  Haines v.
Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d
358, 362 (9th Cir. 2004).  Also, when a pro se plaintiff
technically violates a rule, the court should act with leniency

toward the pro se litigant.  <u>Draper v. Coombs</u>, 792 F.2d 915, 924
(9th Cir. 1986).  Defendants assert that Plaintiff's Motion is
not viable because it is based on his original complaint, which
was superceded by the filing of his Amended Complaint.  <u>See</u>
Defs.' Opp. to Pl.'s Mot., ECF No. 132, at 3-4.  Although the
title of Plaintiff's Motion appears to be based on Plaintiff's
original complaint filed on June 27, 2012, construing Plaintiff's
filing liberally, the Court finds that Plaintiff is seeking
summary judgment on his Amended Complaint.  Defendants also
assert that Plaintiff's Motion should be disregarded because it
was filed nine days after the dispositive motions deadline
expired.  Defs.' Opp. to Pl.'s Mot., ECF No. 132, at 4.  The
Court agrees that Plaintiff's motion was untimely.  <u>See</u> ECF No.
65, Rule 16 Scheduling Order.  However, given Plaintiff's pro se
status and the fact that Plaintiff was only nine days late, the
Court will consider Plaintiff's Motion.

**II.  Defendants Are Entitled to Summary Judgment on
Plaintiff's Constitutional Claims.**

Plaintiff's first claim is entitled "Violations of the
Constitution of the State of Hawaii."  Amended Compl., ECF No.
96, at 6.  However, Plaintiff alleges in this first claim that he
was "assaulted, improperly detained, and suffered the loss of his
liberty without any probable, sufficient, just, or reasonable
cause in the violation of rights guaranteed to him by the Fourth,

Fifth, and Fourteenth Amendments to the United States
Constitution, and Article 1 of the Constitution of the State of
Hawaii." <u>Id.</u> ¶ 24.  Plaintiff also states that this Court has
"jurisdiction over this matter pursuant to 42 U.S.C., 1983 and 28
U.S.C., 1331" because this is a "civil action[] arising under the
Constitution, laws, or treaties of the United States." <u>Id.</u>
¶¶ 1-2.  Accordingly, the Court will address this claim as if
Plaintiff seeks recovery under both the Hawaii Constitution and
Section 1983.

### A.  Plaintiff's Claim Under the Hawaii Constitution

First, to the extent Plaintiff attempts to assert a
Section 1983 claim based on violations of the Hawaii
Constitution, that claim fails because state constitutional
claims are not covered by Section 1983.  <u>See</u> <u>Moreland v. Las
Vegas Metro. Police Dep't</u>, 159 F.3d 365, 371 (9th Cir. 1998)
("state law violations do not, on their own, give rise to
liability under § 1983" (citation omitted)); <u>Lovell v. Poway
Unified Sch. Dist.</u>, 90 F.3d 367, 370 (9th Cir. 1996) ("Section
1983 limits a federal court's analysis to the deprivation of
rights secured by the federal 'Constitution and laws.'" (citing
42 U.S.C. § 1983)).

Second, to the extent Plaintiff is bringing this claim
directly under the Hawaii Constitution, Hawaii courts have
declined to recognize a direct private cause of action for

violation of rights guaranteed under the provisions of the Hawaii Constitution listed by Plaintiffs.  See Makanui v. Dep't of Educ., 6 Haw. App. 397, 721 P.2d 165, 170 n. 2 (Haw. Ct. App. 1986) ("We do not decide whether Hawaii recognizes a cause of action for damages for deprivation of rights under the state's constitution or laws."); see also Maizner v. Hawaii Dep't of Educ., 405 F.Supp. 2d 1225, 1240 (D. Haw. 2005); Galario v. Adewundmi, Civ. No. 07-00159 DAE-KSC, 2009 WL 1227874, at *11 (D. Haw. May 1, 2009) (granting summary judgment against a plaintiff because such a cause of action has not been recognized); Alston v. Read, 678 F.Supp. 2d 1061, 1074 (D. Haw. 2010), reversed on other grounds 663 F.3d 1094 (9th Cir. 2011) ("There is no Hawaii statutory or case-law equivalent to 42 U.S.C. § 1983).  Plaintiff does not offer any legal authority that such an action is cognizable and this Court declines to infer or create such a cause of action.  Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiff's claim for violation of his rights under that Hawaii Constitution.

## B.   Plaintiff's Claims Under Section 1983

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party in an action at law, suit in equity or

other proper proceeding to redress.

42 U.S.C. § 1983.

**1. <u>Section 1983 Claim Against the City</u>**

Plaintiff did not file an opposition to the City's Motion.  However, even construing Plaintiff's own Motion as an opposition, the Court GRANTS summary judgment in favor of the City on Plaintiff's Section 1983 claims.

Local governmental bodies such as the City are "persons" that may be sued under Section 1983.  <u>See</u> <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690 (1978).  However, under Section 1983, the City is only liable for its own actions.  The City is not liable under Section 1983 based on respondeat superior liability, as it is with tort claims.  <u>Id.</u> at 694. Municipal liability under Section 1983 may be established in one of three ways.  The City can only be held liable for unconstitutional acts where the acts were "(1) the direct result of inadequate police training or supervision; (2) the product of an officially adopted policy statement, ordinance, regulation, or decision; or (3) illustrative of a custom which is so permanent and well settled to constitute a custom or usage with the force of law."  <u>Sunn v. City & County of Honolulu</u>, 852 F.Supp. 903, 908-09 (D. Haw. 1994).

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train

23

amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). The word custom recognizes situations where the practices of officials are permanent and well settled. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970). "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

     Here, Plaintiff has not presented any evidence that could create a genuine issue of fact of whether the City exhibited a deliberate indifference to Plaintiff's rights, ratified certain conduct, or had a custom and policy of searching, seizing, or arresting people without probable cause. In contrast, Defendant Cadiz and Defendant Okagawa provided statements in their declarations that they received training in the course of their employment with the City that probable cause must exist before an arrest can take place. Cadiz Decl. ¶ 47;

24

Okagawa Decl. I ¶ 47.  Additionally, Defendant Okagawa stated
that the City has a policy that provides that arrests must be
according to the law and supported by probable cause.  Okagawa
Decl. I ¶ 49 (referencing HPD Policy 7.01, entitled "Arrests and
Persons").  Even if the Court assumes that Plaintiff was arrested
without probable cause, Plaintiff has failed to present any
evidence that the City was aware of, condoned, instituted or
allowed to be instituted actions as alleged, or a policy
encouraging such conduct, or that the City was the moving force
behind any such unlawful practice.  To defeat summary judgment, a
nonmoving party must set forth "significant probative evidence"
in support of its position.  T.W. Elec. Serv., 809 F.2d at 630.
Plaintiff has not presented any probative evidence of inadequate
training or supervision or of a custom or practice to arrest
without probable cause.  The Court GRANTS summary judgment in
favor of the City as to Plaintiff's Section 1983 claim.

## 2. **Section 1983 Claim Against the Officer Defendants**

Plaintiff asserts that Defendant Cadiz and Defendant
Okagawa unlawfully arrested him in violation of his Fourth
Amended rights.[2]  Pl.'s Mot., ECF No. 126, at 20-21.  Defendant

---

[2] Although Plaintiff also lists the Fifth and Fourteenth
Amendments in this claim, false arrest claims are properly made
under the Fourth Amendment, not the Fifth or Fourteenth
Amendments.  "The Due Process Clause of the Fifth Amendment
applies to actions of the federal government and not to
individual activities of private actors."  Rank v. Nimmo, 677
F.2d 692, 701 (9th Cir. 1982).  Additionally, the Fourteenth

Cadiz and Defendant Okagawa assert that had probable cause to arrest Plaintiff.  Officer Defs.' Mot., ECF No. 123, at 4-13.

An arrest is lawful "only if it is accompanied by probable cause to believe that the arrestee has committed, or is committing, an offense."  Torres v. City of L.A., 548 F.3d 1197, 1207 n.7. (9th Cir. 2008).  Probable cause exists "if, 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'"  Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004) (quoting Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002)).  The Court must decide whether a reasonable officer in the same position would have believed that there was probable cause to arrest Plaintiff.  See Fuller v. M.G. Jewlery, 950 F.2d 1437, 1443 (9th Cir. 1991) ("[E]ven if the officers were mistaken that probable cause to arrest the Fullers existed, they are nonetheless immune from liability if their mistake was reasonable.").

As an initial matter, there is no merit to Plaintiff's

Amendment does not apply because of the "more-specific provision" rule.  See Graham v. Connor, 490 U.S. 386, 395 (1989) (providing that when there is an "explicit textual source" of constitutional protection available, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" such claims).  The Court, therefore, GRANTS Defendants' Motions as to Plaintiff's Section 1983 claims brought under the Fifth and Fourteenth Amendments.

argument that a police officer cannot make a warrantless arrest for a misdemeanor crime unless the misdemeanor occurs in the officer's presence.  See Pl.'s Mot., ECF No. 126, at 25.  Under Hawaii Revised Statute Section 803-5, a police officer "may, without warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise."  Haw. Rev. Stat. § 803-5.

    The Officer Defendants contend that they had probable cause to arrest Plaintiff for criminal property damage in the third degree under Hawaii Revised Statutes Section 708-822. Cadiz Decl. ¶ 36.  A person commits the offense of criminal property damage in the third degree if:

> The person intentionally or knowingly damages
> the property of another, without the other's
> consent, in an amount exceeding $500.

Haw. Rev. Stat. § 708-822(1)(b).

    A threshold dispute is whether Plaintiff was arrested at the register, as he contends, or was merely detained at the register and escorted outside where he was later placed under arrest, as Defendants contend.  Factors relevant to a custody determination include (1) the language used by the officers; (2) the physical surroundings of the location where the questioning occurs; (3) the extent to which the suspect is confronted with evidence of guilt; (4) the duration of the

27

detention; and (5) the degree of pressure applied to detain the individual.  United States v. Hayden, 260 F.3d 1062, 1066 (9th Cir. 2001).  Plaintiff testified at his deposition that Defendant Cadiz told Plaintiff that he was under arrest at the register inside the Store.  Pl.'s Dep., ECF Nos. 112-12, 124-8, 133-9, at 79:7-19.  Defendant Cadiz stated that Plaintiff was "placed under arrest at 2200 hours," and Plaintiff's Store receipt shows that he completed his purchase at the register at 22:00:30 hours. Cadiz Interrog. Responses, Ex. K to Defs.' Statement, ECF No. 133-16; Ex. 9 to Pl.'s Statement, ECF No. 130-10.  Accordingly, the Court will assume *arguendo* that Plaintiff was arrested at the register and determine whether a reasonable officer would have believed that there was probable cause for the arrest at that time.

The Court must consider whether the Officer Defendants could have reasonably concluded, under the totality of the circumstances, that a "fair probability" existed that Plaintiff knowingly damaged Mr. Querido's property, without Mr. Querido's consent, in an amount exceeding $500, at the time that Plaintiff asserts he was placed under arrest.  See Haw. Rev. Stat. § 708-822(1)(b).  Whether the opposite conclusion was also reasonable, or even more reasonable, does not matter so long as the Officer Defendants' conclusion was itself reasonable.  See Conner, 672 F.3d 1126, 1132.

28

Before Plaintiff was presumably arrested at the register, Defendant Cadiz had met with and interviewed Mr. Querido, who told Defendant Cadiz that his vehicle did not have the scratch marks prior to driving to the Store, that he did not give anyone permission to damage his car, and that he estimated the damage to his car was approximately $1000.  Querido Aff. ¶ 12; Cadiz Decl. ¶ 13.  Mr. Querido observed a man exit a white truck, walk along the driver's side of Mr. Querido's car, and extend his arm over the hood as he passed the front end of Mr. Querido's car.  Querido Aff. ¶ 9.  Mr. Querido identified to Defendant Cadiz a white truck with license plate PTR 107 as the truck he saw the man exit from.  Querido Aff. ¶ 2; Cadiz Decl. ¶ 16.  Mr. Querido described the man who exited the white truck as a tall, older, bald man wearing a white shirt.  Querido Aff. ¶ 2; Cadiz Decl. ¶ 16.  Approximately ten minutes after Defendant Cadiz arrived on scene he called into dispatch to request that they run the license plate of the white truck.  Cadiz Decl. ¶ 30; Okagawa Decl. II ¶ 11; Ex. J to Defs.' Counter-Statement, ECF No. 133-15 (recordings of radio transmission on the night of the incident).  Dispatch responded almost immediately that the white truck was registered to "Antonio Gonzalez."  Cadiz Decl. ¶ 31; Okagawa Decl. II ¶ 14; Ex. J to Defs.' Counter-Statement, ECF No. 133-15 (recordings of radio transmission on the night of the incident).

29

Defendant Cadiz spoke with Defendant Okagawa who told Defendant Cadiz that Defendant Okagawa had viewed a video taken from the Store's surveillance system that had captured the incident.  Cadiz Decl. ¶ 25.  Defendant Cadiz went into the Store to try to locate the suspect.  Cadiz Decl. ¶ 26.  At approximately 10:00 p.m., Defendant Cadiz saw Plaintiff, an older bald man wearing a green t-shirt, standing in line at one of the registers.  Cadiz Decl. ¶ 27.  Defendant Cadiz approached Plaintiff and asked if he was the driver of the white truck, to which Plaintiff replied "yes."  Cadiz Decl. ¶ 29.[3]  Defendant Cadiz then asked Plaintiff to produce identification.  Cadiz Decl. ¶ 30.  Plaintiff showed Defendant Cadiz a Hawaii driver's license with the name "Antonio Gonzalez, Jr." and a photograph bearing his resemblance.  Cadiz Decl. ¶ 30.

A reasonable officer in Defendant Cadiz's position would have believed that there was probable cause to arrest Plaintiff for criminal property damage based on the investigation conducted by Defendant Cadiz, Mr. Querido's description of the suspect as an older bald male, the confirmation of Mr. Querido's description of the incident to Defendant Cadiz by Defendant Okagawa after he viewed the surveillance footage, the

---

[3] As detailed in the fact section, Plaintiff's conclusory assertions that purport to contradict the testimony of Defendant Cadiz regarding what occurred at the register are not admissible and cannot be considered by the Court in deciding summary judgment.

identification of Plaintiff as the owner of the white truck by
police dispatch, the statement by Plaintiff that he was the
driver of the white truck, and the confirmation of Plaintiff's
identity by his driver's license.  The fact that Mr. Querido
initially described the suspect as a "Samoan" man wearing a white
t-shirt does not defeat the finding of probable cause given all
of the other information that the Officer Defendants knew at the
time of Plaintiff's arrest.  Accordingly, the Court GRANTS
summary judgment in favor of the Defendant Cadiz and Defendant
Okagawa on Plaintiff's Section 1983 claim.

**III.  Defendants Are Entitled to Summary Judgment on
Plaintiff's State Law Claims.**

Plaintiff asserts six state law claims against the
Officer Defendants:  intentional infliction of emotional
distress; negligence; defamation; negligent training, supervision
and/or discipline; false imprisonment; and conversion.  Amended
Compl., ECF No. 96, at 8-12.  Plaintiff also asserts two state
law claims against the City:  negligence under respondeat
superior; and negligent training, supervision and/or discipline.
Id. ¶¶ 31, 37-38.  Defendants seek summary judgment on all of
Plaintiff's state law claims.  See City's Mot., ECF No. 113, at
9-12; Officer Defs.' Mot., ECF No. 123, at 16-31.

Although the title of Plaintiff's Motion includes "any
and all claims asserted by Plaintiff," Plaintiff does not address

any of his state law claims in his Motion.  See Pl.'s Mot., ECF
No. 126.  Plaintiff also does not address his state law claims in
his Opposition to the Officer Defendants' Motion, which sought
summary judgment as to the state law claims.  See Pl.'s Opp. to
Officer Defs.' Mot., ECF No. 127.  As noted above, Plaintiff did
not file an opposition to the City's Motion, which also sought
summary judgment on the state law claims asserted against the
City.  Where a plaintiff abandons his state law claims by failing
to address them in his motion for summary judgment or in
opposition to the defendant's motion for summary judgment,
summary judgment against the plaintiff on those state law claims
is appropriate.  See Ramirez v. City of Buena Park, 560 F.3d
1012, 1026 (9th Cir. 2009) (affirming the district court's grant
of summary judgment to defendants where plaintiff did not address
his state law claims in his motion or opposition).  However, even
looking to the substance of Plaintiff's state law claim, the
Court GRANTS summary judgment in favor of Defendants as detailed
below.

   **A. The Officer Defendants are Entitled to Summary
Judgment on All of Plaintiff's State Law Claims.**

          Defendant Okagawa and Defendant Cadiz are entitled to
summary judgment on all of Plaintiff's state law claims based on
conditional privilege and the substance of each claim.

1. **The Officer Defendants are Entitled to Conditional Privilege as to Plaintiff's State Law Claims.**

Under Hawaii law, "non-judicial governmental officials, when acting in the performance of their public duty, enjoy the protection of what has been termed a qualified or conditional privilege." Towse v. Hawaii, 64 Haw. 624, 647 P.2d 696, 702 (Haw. 1982).  This privilege is overcome if the official was motivated by malice and not by an otherwise proper purpose.  See Kajiya v. Dep't of Water Supply, 2 Haw. App. 221, 629 P.2d 635, 640 (Haw. Ct. App. 1981); Medeiros v. Kondo, 55 Haw. 499, 522 P.2d 1269, 1271-72 (Haw. 1974).  Hawaii courts define malice as "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, ill will, and wickedness of heart." Awakuni v. Awana, 115 Haw. 126, 165 P.3d 1027, 1042 (Haw. 2007) (quoting Black's Law Dictionary 976-77 (8th ed. 2004) (internal quotation marks omitted)).  Summary judgment is only proper on conditional privilege grounds when malice has been removed from the case because the existence of malice is generally a jury question. Id.

The Court finds that Defendant Cadiz and Defendant Okagawa are entitled to conditional privilege for all of

Plaintiff's state law claims.[4]  Plaintiff presents no facts to
support a finding of malice.  Defendant Cadiz and Defendant
Okagawa both attest to the fact that they did not know Plaintiff
on the night of the incident and did not harbor any ill will
toward him.  Cadiz Decl ¶ 44; Okagawa Decl. I ¶ 45.  Plaintiff
does not address these statements in his Opposition and does not
present any evidence in his Concise Statement that would suggest
malice.  See Pl.'s Opp. to Officer Defs.' Mot., ECF No. 127;
Pl.'s Statement, ECF No. 130.  Plaintiff has not raised a genuine
factual dispute as to malice.  See McNally v. Univ. of Haw., 780
F.Supp. 2d 1037, 1060 (D. Haw. 2011) (concluding defendants were
entitled to conditional privilege on plaintiff's state law claims
because plaintiff failed to raise any issue of fact as to
malice).  Accordingly, the Officer Defendants are entitled to
conditional privilege and the Court GRANTS summary judgment in

---

[4] In Plaintiff's claims of intentional infliction of
emotional distress and negligent training, supervision and/or
discipline, Plaintiff alleges that Defendant Cadiz and Defendant
Okagawa acted outside the scope of their employment.  Amended
Compl., ECF No. 96, ¶¶ 26, 36.  However, Plaintiff does not set
forth any evidence that Defendant Cadiz or Defendant Okagawa were
acting outside the scope of their employment when they performed
the acts described on the night of the incident.  Both Defendant
Cadiz's and Defendant Okagawa's declarations state that they were
acting within the course and scope of their employment on the
night of the incident.  Cadiz Decl. ¶¶ 4-5; Okagawa Decl. I ¶¶ 4-
6.  Plaintiff did not address this fact in his Concise Statement.
Accordingly, the fact that Defendant Cadiz and Defendant Okagawa
were acting within the course and scope of their employment on
the night in question is deemed admitted.  See Local Rule
56.1(g).

favor of the Officer Defendants as to all of Plaintiff's state law claims.

**2.** **Regardless of Conditional Privilege, the Officer Defendants are Entitled to Summary Judgment on Plaintiff's State Law Claims.**

Even putting aside the issue of conditional privilege, the Officer Defendants are entitled to summary judgment on Plaintiff's state law claims.  The Court addresses each of the six state law claims asserted in Plaintiff's Amended Complaint below.

**a.   Intentional Infliction of Emotional Distress**

Plaintiff alleges that the Officer Defendants were "intentional and/or reckless, outrageous, unreasonable, and without just cause or excuse" caused Plaintiff severe emotional distress.  Amended Compl., ECF No. 96, ¶¶ 26-28.  The elements of intentional infliction of emotional distress are:  "(1) that the act allegedly causing the harm was intentional; (2) that the act was unreasonable; and (3) that the actor should have recognized that the act was likely to result in illness." Dunlea v. Dappen, 83 Haw. 28, 924 P.2d 196, 206 & n.11 (Haw. 1996) (citing Marshall v. Univ. of Haw., 9 Haw. App. 21, 821 P.2d 937, 947 (Haw. Ct. App. 1991)).  Hawaii courts have interpreted the term "outrageous" to mean "without just cause or excuse and beyond all bounds of decency." Enoka v. AIG Haw. Ins. Co., 109 Haw. 537,

559, 128 P.3d 850, 872 (Haw. 2006) (citing <u>Lee v. Aiu</u>, 85 Haw. 19, 34 n.12, 936 P.2d 655, 670 n.12 (Haw. 1997) (internal quotation marks and citations omitted)).  "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." <u>Dunlea</u>, 924 P.2d at 206 (quotations omitted). Liability for intentional infliction of emotional distress is "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u>

The undisputed facts of this case do not rise to the level of outrageousness required to establish a claim of intentional infliction of emotional distress.  The Officer Defendants had probable cause to arrest Plaintiff, and Plaintiff has not presented any facts demonstrating outrageous or extreme conduct.  Plaintiff's conclusory allegations in his Amended Complaint are not sufficient. <u>See</u> Amended Coml., ECF No. 96, ¶ 28.  Accordingly, the Court GRANTS summary judgment in favor of the Officer Defendants on the claim of intentional infliction of emotional distress.

### b.  Negligence

Plaintiff alleges that the Officer Defendants

"negligently caused [Plaintiff] to suffer physical injuries, chest pains, mental anguish, server emotional distress, anxiety, embarrassment, humiliation, worry, and anger." Amended Compl., ECF No. 96, ¶ 30.  Under Hawaii law, a claim for negligence requires Plaintiff to prove that Defendants "(1)[had a] duty to conform to a certain standard of conduct, (2) breach of the duty, (3) causal connection between the breach and the injury, and (4) damage to [Plaintiff]." Nielsen v. Am. Honda Motor Co., 92 Haw. 180, 989 P.2d 264, 274 (Haw. Ct. App. 1999).  "A negligence action lies only when the defendant owes a duty to the plaintiff." Hao v. Campbell Estate, 76 Haw. 77, 869 P.2d 216, 219 (Haw. 1994).  Whether the law imposes a duty of care on a relationship is a question of law. See id. at 221.

Here, Plaintiff's negligence claim fails as a matter of law because Plaintiff fails to plead what duty the Officer Defendants might have breached and fails to provide any evidence of actual damages.  There is no duty to not arrest without probable cause. See Pourny v. Maui Police Dep't., 127 F. Supp. 2d 1129, 1145-46 (D. Haw. 2000).  The intentional tort of "false arrest" addresses arrest without probable cause, which Plaintiff alleges in his Sixth Cause of Action discussed below. See Reed v. City & County of Honolulu, 76 Haw. 219, 873 P.2d 98, 109 (Haw. 1994).  Plaintiff cannot sue under negligence for false arrest. Accordingly, the Court GRANTS the summary judgment in favor of

the Officer Defendants on this claim.

### c.  Defamation

Plaintiff alleges that Defendant Cadiz defamed Plaintiff when Defendant Cadiz referenced in his report that Plaintiff had "one (1) prior arrest" causing Plaintiff to suffer "great mental anguish, severe emotional distress, anxiety, embarrassment, humiliation, worry and anger."  Amended Compl., ECF No. 96, ¶ 34.  "Under both federal and Hawaii law, truth is a complete defense to an action for defamation."  Basilius v. Honolulu Pub. Co., Ltd., 711 F.Supp. 548, 551 (D. Haw. 1989) (citing Garrison v. Louisiana, 379 U.S. 64, 73 (1964) and Wright v. Hilo Tribune-Herald, Ltd., 31 Haw. 128, 130 (1929)).

During Plaintiff's deposition, he stated that he was arrested on one prior occasion.

> Q: Did you in fact have one prior arrest on August 20, 2011?
>
> A: Fifty one years prior to August 20, 2011. Fifty one years.  Okay.
>
> ***
>
> Q: So, what the officer put in his report is correct?
>
> A: I was arrested.  I was arrested.  Yes.

Pl.'s Dep., ECF Nos. 112-12, 124-8, 133-9, at 41-42:16-10. Plaintiff cannot prove the falsity of Defendant Cadiz's statement because he has admitted its truth.  Accordingly, the Court GRANTS summary judgment in favor of Defendant Cadiz as to the defamation

claim.

> **d.  Negligent Training, Supervision, and/or Discipline**

Although not entirely clear from his pleading, it
appears that Plaintiff asserts his claim for negligent training,
supervision and/or discipline against both the City and the
Officer Defendants.  See Amended Complaint, ECF No. 96, at 9-11.
First, the only admissible evidence before the Court demonstrates
that Defendant Cadiz and Defendant Okagawa have been trained that
probable cause must exist before an arrest can take place.  Cadiz
Decl. ¶ 47; Okagawa Decl. I ¶ 47.  HPD policy emphasizes that
arrests must be according to law and must have a probable cause
basis.  Okagawa Decl. I ¶ 49.  Second, there is no evidence of
negligent supervision.  Aside from Plaintiff's allegation in his
Amended Complaint, there is no evidence or indication that
Defendant Cadiz or Defendant Okagawa were acting outside the
course and scope of their employment on the night of the
incident.  Without such evidence, Plaintiff cannot prove that the
City negligently supervised the Officer Defendants.  See Dairy
Road Partners v. Island Ins. Co., 92 Haw. 398, 427, 992 P.2d 93,
122 (Haw. 2000) ("negligent supervision may only be found where
an employee is acting *outside* of the scope of his or her
employment").  Finally, there is no evidence that there has been
a failure to discipline the Officer Defendants.  Plaintiff's
claim of negligent training, supervision and/or discipline is

factually unsupported and summary judgment is GRANTED in favor of
Defendants on the claim of negligent training, supervision,
and/or discipline.

### e.  False Imprisonment

To prevail on his false imprisonment claim, Plaintiff
must show that no probable cause existed to arrest him.  See
Fraser v. County of Maui, 855 F. Supp. 1167, 1183 (D. Haw.
1994)(citing Lopez v. Wiqwam Dep't Stores, 49 Haw. 416, 423, 421
P.2d 289, 293-94 (Haw. 1966).  Probable cause is an affirmative
defense to the claim of false imprisonment.  Lopez, 49 Haw. at
423, 421 P.2d at 293-94.  As detailed above, the Court finds that
the Officer Defendants had probable cause to arrest Plaintiff.
Accordingly, the Court GRANTS summary judgment in favor of the
Officer Defendants as to Plaintiff's claim for false
imprisonment.

### f.  Conversion

Plaintiff alleges that the Officer Defendants "exerted
dominion and control over Plaintiff's truck and cash, thereby
depriving Plaintiff of the possession and use of said property
and causing him damages."  Amended Compl., ECF No. 96, ¶ 42.
Under Hawaii law, conversion is defined as "[a]ny distinct act of
dominion wrongfully exerted over another's personal property in
denial of or inconsistent with his rights therein."  Tsuru v.
Bayer, 25 Haw. 693, 696 (Haw. 1920).  The elements of a

conversion claim are "(1) [a] taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." <u>Freddy Nobriga Enters., Inc. v. State, Dept. of Hawaiian Home Lands</u>, 129 Haw. 123, 295 P.3d 993, 999 (Haw. Ct. App. 2013) (quoting <u>Tsuru</u>, 25 Haw. at 696)).

Here, Plaintiff has not asserted any facts to support his allegations of conversion. Plaintiff's truck was not seized or even touched by the police officers on the night of the incident. Okagawa Decl. I ¶ 43. Neither Defendant Cadiz nor Defendant Okagawa took Plaintiff's truck from him, nor did they instruct any other officer to do so. Okagawa Decl. I ¶ 44. There is no evidence that the Officer Defendants took Plaintiff's truck or cash without his consent, that they assumed ownership of his property, that they illegally used or abused his property, or that the Officer Defendants wrongfully detained Plaintiff's property. <u>See Tsuru</u>, 25 Haw. at 696. This claim is without merit. The Court GRANTS summary judgment in favor of the Officer Defendants on Plaintiff's claim of conversion.

**B.  The City is Entitled to Summary Judgment on All of Plaintiff's State Law Claims.**

First, Plaintiff's negligence claim against the City is based on the City's responsibility for the negligent acts of Defendant Cadiz and Defendant Okagawa. Under Hawaii law, "if an

employee is immune from suit, then the employer is also immune from suit and cannot be held liable." Reed v. City and County of Honolulu, 76 Haw. 219, 227, 873 P.2d 98, 107 (Haw. 1994) (citing Hulsman v. Hemmeter Dev. Corp., 65 Haw. 58, 61–62, 647 P.2d 713, 716 (Haw. 1982)). As detailed above, the Officer Defendants are entitled to conditional privilege. Therefore, based on the Officer Defendants' conditional privilege, the Court GRANTS summary judgment in favor of the City as to Plaintiff's claim of negligence. Even without conditional privilege, this claim fails because Plaintiff fails to plead what duty the Officer Defendants breached and fails to provide any evidence of actual damages. There can be no respondeat superior liability when the employees did not commit a tortious act.

Second, as to Plaintiff's claim for negligent training, supervision, and/or discipline, the evidence demonstrates that Defendant Cadiz and Defendant Okagawa have been trained that probable cause must exist before an arrest can take place and HPD policy emphasizes that arrests must be according to law and must have a probable cause basis. Cadiz Decl. ¶ 47; Okagawa Decl. I ¶¶ 47, 49. As detailed above, there is no indication that Defendant Cadiz or Defendant Okagawa were acting outside the course and scope of their employment on the night of the incident and there is no evidence that there has been a failure to discipline the Officer Defendants. Plaintiff's claim of

42

negligent training, supervision and/or discipline is factually
unsupported, and the Court GRANTS summary judgment in favor of
the City as to Plaintiff's claim for negligent training,
supervision, and/or discipline.

<u>CONCLUSION</u>

        In accordance with the foregoing, the Court GRANTS the
City and County of Honolulu's Motion for Summary Judgment, GRANTS
Jensen Okagawa and Roberto Cadiz's Motion for Summary Judgment,
and DENIES Plaintiff's Amended Motion for Summary Judgment.  The
Court GRANTS summary judgment in favor of Defendants on all
counts and directs the Clerk of Court to close this case.

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, JUNE 3, 2013.



                                    Richard L. Puglisi
                                    United States Magistrate Judge


**GONZALEZ V. OKAGAWA, ET AL.; CIVIL NO. 12-00368 RLP; MEMORANDUM
OPINION AND ORDER (1) GRANTING CITY AND COUNTY OF HONOLULU'S
MOTION FOR SUMMARY JUDGMENT; (2) GRANTING JENSEN OKAGAWA AND
ROBERTO CADIZ'S MOTION FOR SUMMARY JUDGMENT; AND (3) DENYING
PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT**